**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GRETCHEN L. WALKER, | ) | CASE NO. 1:15-CV-1234 |
| | ) | |
| Plaintiff, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Gretchen L. Walker ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On November 30, 2011, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of October 1, 2007. (Transcript ("Tr.") 11.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On May 30, 2013, an ALJ held

Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A second hearing was held on December 6, 2013, during which Plaintiff, with counsel, participated and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On February 6, 2014, the ALJ found Plaintiff not disabled. (Tr. 22.) On February 24, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On June 19, 2015, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 11, 12, 13.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in failing to evaluate Plaintiff's severe impairment of fibromyalgia as required by Social Security Ruling (S.S.R.) 12-2p, and (2) the ALJ's Step Three evaluation was insufficient to support the disability determination.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in July 1979 and was 28-years-old on the alleged disability onset date. (Tr. 20) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as a waitress. (Tr. 19.)

### B. Medical Evidence

#### 1. Medical Reports

In November 2009, Plaintiff treated with Gary Petty, M.D., for chronic wrist and hand pain, numbness and tingling in her fingers, mild fatigue, and migraine headaches.

(Tr. 416.)  Dr. Petty prescribed medication and ordered tests. (Tr. 419.)

Plaintiff returned to Dr. Petty in December 2009 and reported that her wrists continued to hurt and Prednisone provided little relief. (Tr. 409.)  Plaintiff said that a healthcare provider previously diagnosed ulnar nerve neuropathy and osteoarthritis. (*Id.*)  She described her osteoarthritis as mildly uncomfortable but nonprogressive. (*Id.*)  During a physical examination, Plaintiff complained of pain with bilateral wrist range of motion. (Tr. 410.)  None of her major joints were tender. (*Id.*)

In April 2010, Plaintiff followed up with Dr. Petty for arm pain, asthma, fatigue, and bronchitis. (Tr. 406.)  On examination Plaintiff's arms and hands were mildly tender. (Tr. 407.)  During testing, Plaintiff made a poor effort to squeeze her hands. (*Id.*)

During July 2010, neurologist M. Barry Louden, M.D., evaluated Plaintiff due to pain and numbness in her arms and legs. (Tr. 386.)  Dr. Louden explained that a 2009 EMG showed mild left and mild to moderate right ulnar neuropathies but no evidence of generalized neuropathy. (*Id.*)  Plaintiff grimaced when Dr. Louden lightly touched her arms and hands and deeply touched her legs. (*Id.*)  Dr. Louden indicated there was "clear profound give-way resistance to muscle strength testing everywhere." (*Id.*)  Plaintiff's gait was normal, though she moved slowly and grimaced when she moved from sitting to standing. (Tr. 387.)  Dr. Louden could not explain the origin of Plaintiff's pain and opined that based on the examination, Plaintiff was exaggerating her symptoms. (*Id.*)

On August 27, 2010, Plaintiff reported to Dr. Petty that a family doctor had diagnosed fibromyalgia after performing a tender points test. (Tr. 403.)  Plaintiff said that she experienced "moderate" pain in her tender points and joint stiffness. (*Id.*)  Plaintiff

3

had tried anti-inflammatories but was not taking any medication because "nothing work." (*Id.*) Following a physical examination, Dr. Petty reported that Plaintiff had tenderness in "many pressure points in the arms, back, chest, thighs, and calves." (Tr. 404.) She experienced pain with range of motion in both shoulders and elbows. (*Id.*) Dr. Petty opined that Plaintiff exaggerated her pain with some movements and winced or grimaced at barely being touched. (*Id.*) For fibromyalgia, Dr. Petty prescribed exercise as tolerated and heat therapy. (Tr. 405.)

On April 13, 2012, Plaintiff presented to the emergency department at Marietta Memorial Hospital with complaints of neck pain, facial numbness, and sharp pain in her arms and legs. (Tr. 465.) Plaintiff explained that her symptoms had been ongoing for two years and a physician told her that she may have fibromyalgia. (*Id.*) Plaintiff had not been taking medication. (*Id.*) Plaintiff's diagnosis included fibromyalgia. (*Id.*) Daniel Jarrell, D.O., noted that Plaintiff's symptoms were diffuse and not specific, and her physical examination was generally unremarkable. (Tr. 466.) Dr. Jarrell advised Plaintiff that if she was not improving, she needed to follow through with a primary care physician and a neurologist. (*Id.*)

Plaintiff sought emergency room treatment on June 24, 2012, for frequent falls and weakness in her arms and legs. (Tr. 514.) Plaintiff had not been taking any medication. (*Id.*) Diagnostic testing and examination findings were generally unremarkable. (Tr. 514, 516-17.) Plaintiff was discharged in improved condition on June 26, 2012, after healthcare providers administered Neurontin and Solu-Medrol. (Tr. 514.) Frederic Humphrey, D.O., scheduled Plaintiff for an outpatient nerve conduct study, prescribed Neurontin, and advised her to take over-the-counter medication for

4

pain or discomfort. (*Id.*) Plaintiff's final diagnoses were recurrent myalgia with history of fibromyalgia and bronchial asthma. (*Id.*)

In April 2013, Plaintiff established care with Katrina Barnes, M.D., at Memorial Health System's Family Practice. (Tr. 507.) Plaintiff complained that it was becoming harder for her to walk and to "do anything." (*Id.*) Plaintiff last treated with Dr. Petty in 2010, and he had diagnosed fibromyalgia. (*Id.*) She had difficulty walking due to weakness and falls. (Tr. 509.) She could not drive, would not go to the store by herself, and had to sit on a stool to perform activities of daily living. (*Id.*) Plaintiff complained of muscle weakness, numbness, tremors, ataxia, and parenthesis. (*Id.*) She denied back and joint pain. (*Id.*) On examination, Plaintiff exhibited decreased strength, but Dr. Barnes could not determine whether Plaintiff truly had muscle weakness or was making a poor effort. (Tr. 510.) Dr. Barnes diagnosed a tremor and muscle weakness. (Tr. 511.) The doctor opined that many of Plaintiff's symptoms appeared to be neurological in origin. (*Id.*) Dr. Barnes referred Plaintiff to neurology and planned to evaluate Plaintiff's prior medical records. (*Id.*)

On April 29, 2013, Dr. Louden reevaluated Plaintiff for diffuse weakness and fluctuating numbness. (Tr. 655.) Plaintiff complained of very little pain, although she mentioned aching joints and fatigue. (*Id.*) She indicated that she had "fixed numbness laterally distal to the right knee" and sometimes had to drag her right leg. (*Id.*) Dr. Louden recounted that a 2009 EMG suggested bilateral ulnar neuropathies but a 2012 EMG did not suggest abnormalities. (*Id.*) Plaintiff displayed profound give-way resistance during muscle strength testing, especially with forward neck flexion. (*Id.*) Plaintiff's reflexes and sensation were intact. (*Id.*) Dr. Louden could not find evidence of

an underlying neurologic illness. (Tr. 656.)

Plaintiff sought emergency room care for spasms and paresthesias in August 2013. (Tr. 512.) She declined to undergo testing. (Tr. 513.)

### 2. Agency Reports

In January 2012 state agency physician Lynne Torello, M.D., reviewed the record. (Tr. 68-74.) Dr. Torello opined that Plaintiff could perform a range of light work, including lifting and carrying up to ten pounds frequently and 20 pounds occasionally. (Tr. 71.) Plaintiff could also sit, stand, or walk for more than six hours in an eight-hour workday. (*Id.*) She could occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 72.) Dr. Torello recommended environmental limitations. (*Id.*) During March 2012, state agency physician Leon Hughes, M.D., reviewed the updated record and affirmed Dr. Torello's findings. (Tr. 92.)

On July 2, 2013, Sushil Sethi, M.D., conducted a physical examination of Plaintiff. (Tr. 657.) Plaintiff complained of profound weakness in her legs and left arm. (*Id.*) On examination, Plaintiff's hips and ankles had a normal range of motion, but her knee range of motion was limited. (Tr. 658.) She walked on her tiptoes and heels without an ambulatory aid, and her gait was normal. (*Id.*) Plaintiff's shoulder blades and suprascapular area were mildly tender and she had some limitation in her shoulder range of motion. (*Id.*) Her range of motion in her elbows and wrists was normal. (*Id.*) She could grasp, pinch, and manipulate without issue. (*Id.*) Her coordination was intact and her upper extremities had no muscle weakness or atrophy. (*Id.*) Plaintiff's neurological examination was normal. (Tr. 659.) Dr. Sethi opined that Plaintiff had non-specific neurological complaints of lost motor and sensory abilities with no particular

diagnosis and no clinical findings of fibromyalgia or a neurological disorder. (Tr. 659.) Plaintiff could sit for four to six hours, walk or stand for three to four hours, and carry up to 20 to 25 pounds frequently and 30 to 50 pounds occasionally. (*Id.*)

**C.      Hearing Testimony**

    **1.      Plaintiff's Hearing Testimony**

During a May 2013 hearing, Plaintiff testified that she had worked as a waitress, but stopped because she dropped things. (Tr. 48.)  Her arms and hands became weak and numb. (Tr. 48, 58.)  Plaintiff could not perform any work because she had difficulty using her hands to open or hold items and could not sit for long periods of time. (Tr. 48.) She experienced fatigue as well as numbness in her legs. (*Id.*)

Plaintiff did light cleaning around the home while taking breaks. (Tr. 49.)  She made dinner but received help cutting or mixing. (*Id.*)  She could not drive a vehicle or push a shopping cart. (Tr. 55.)  She could stand for about a minute and walk about four or five feet. (Tr. 50.)  Plaintiff's medical providers had not prescribed an ambulatory device. (*Id.*)  She could sit for five minutes before a tingling sensation started in her legs and her feet went numb. (*Id.*)

The ALJ concluded the May 2013 hearing because additional evidence was needed. (Tr. 59.)  The ALJ requested that Plaintiff undergo a consultative physical examination given the absence of medical treatment in the case. (*Id.*)

The ALJ conducted a second hearing in December 2013. (Tr. 28.)  Plaintiff again testified that she had difficulty holding or opening things. (Tr. 33.)  Her right hand went numb while eating. (*Id.*)  These problems occurred three or four times a week. (Tr. 34.) Plaintiff experienced numbness in her right foot on a daily basis. (*Id.*)  If she sat with her

legs bent, her feet would tingle or burn and sometimes turn red or purple. (*Id.*) She had muscle spasms in her shoulders. (*Id.*)

### 2. Vocational Expert's Hearing Testimony

Patricia Posey, a vocational expert, testified at Plaintiff's December 2013 hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience. (Tr. 37.) The individual could lift 50 pounds occasionally and 25 pounds frequently. (*Id.*) The individual could stand and walk six hours in an eight hour day; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (Tr. 37-38.) The individual could have occasional exposure to fumes, odors, dust, gasses, poorly ventilated areas, and hazards. (Tr. 38.) The VE testified that the individual would be able to perform Plaintiff's past relevant work, in addition to such jobs as a cleaner and a stocker (*Id*.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirement of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since October 1, 2007, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia, degenerative changes in the cervical spine with chronic neck pain, and unlar neuropathy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except that she can no more than occasionally climb ladders, ropes, or scaffolds; she can no more than frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can tolerate no more than occasional exposure to fumes, odors, dusts, gases, poorly ventilated areas, and hazards.

6. The claimant is capable of performing past relevant work as a waitress. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2007, through the date of this decision.

(Tr. 13-21.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the

evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

### 1. The ALJ's Step Three Analysis

Plaintiff argues that the ALJ failed to provide sufficient rationale for her finding that Plaintiff's impairments, in particular Plaintiff's fibromyalgia, did not meet or equal a listed impairment. The Commissioner responds that Plaintiff has failed to come forward with evidence showing that she met or medically equaled any listing and that the ALJ's finding is substantially supported.

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or medically equals one of the impairments in the Listings. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii)). An ALJ must compare the claimant's medical evidence with the requirements of listed impairments when considering whether the claimant's impairment or combination of impairments is

11

equivalent in severity to any listed impairment. *Id.* at 415; *Hunter v. Astrue*, No. 1:09-CV-2790, 2011 WL 6440762, at *3 (N.D. Ohio Dec. 20, 2011) (Oliver, J.); *May v. Astrue*, No. 4:10-CV-1533, 2011 WL 3490186, at *8-9 (N.D. Ohio June 1, 2011) (White, M.J.). Nevertheless, it is the claimant's burden to show that he meets or medically equals[1] an impairment in the Listings. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (per curiam).

S.S.R. 12-2p explains that fibromyalgia is not a listed impairment, and therefore, cannot meet a listing. S.S.R. 12-2p, 2012 WL 3104869 at *6 (July 25, 2012). The ALJ still must determine whether a claimant's fibromyalgia medically equals a listing, such as Listing 14.09D for inflammatory arthritis, or whether it combines with at least one other medically determinable impairment to medically equal a listing. *Id.*

Here, the ALJ concluded at Step Two of her analysis that Plaintiff's fibromyalgia, degenerative changes in the cervical spine with chronic neck sprain, and ulnar neuropathy were severe impairments. (Tr. 13-15.) The ALJ then provided the following Step Three analysis:

> The listing of impairments found in 20 C.F.R. [Part 404] have been reviewed; specifically Listings 1.04 involving disorders of the spine under

---

[1] A claimant may be found disabled if her impairment is the *medical equivalent* of a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). This means that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a). An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any listed impairment. *Cf. Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations").

12

> musculoskeletal impairments and 11.14 peripheral neuropathies under neurological impairments. Upon review of the entire record, the undersigned finds no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, which would be required to satisfy the listing 1.04. The undersigned finds no evidence of disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station, which would be required to satisfy the listing 11.14.

(Tr. 16.) Plaintiff argues that the ALJ's failure to provide any rationale for the conclusion that her fibromyalgia did not medically equal a listing requires remand. Plaintiff also maintains that the ALJ's analysis of Listings 1.04 and 11.14 was too conclusory to allow for meaningful review.

Plaintiff cites to the Sixth Circuit's decision in *Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411 (6th Cir. 2011)*. In that case, the ALJ determined, at step two of the sequential analysis, that the claimant had the severe impairments of back pain and adjustment disorder. At step three of the analysis, the ALJ made a general conclusion that the claimant's impairments did not satisfy the criteria for any listing in Section 1.00, which addresses musculoskeletal conditions, or in Section 12.00, which addresses mental impairments. Thereafter, although the ALJ continued to discuss the criteria for Listing 12.04 in detail, the ALJ did not address any specific listing in Section 1.00.

The Sixth Circuit determined that the ALJ had erred in failing to analyze whether the claimant's back impairment satisfied the criteria for any of the Listings in Section 1.00. *Id.* at 416 ("Ultimately, the ALJ erred by failing to analyze [the claimant's] physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis."). According to the Sixth Circuit, the ALJ's failure to do so deprived the court of the ability to conduct a meaningful review of his decision:

13

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id*.

In *Reynolds,* the ALJ generally concluded, in the first paragraph of his analysis, that Plaintiff's impairments did not satisfy the criteria of Listing 1.00 or Listing 12.00, and then proceeded to analyze the criteria of only Listing 12.04, without any further discussion of Listing 1.00. Here, the ALJ did not even mention fibromyalgia or any potentially relevant listing, even after concluding in her Step Two analysis that fibromyalgia was a severe impairment. Application of *Reynolds* and S.S.R. 12-2p to this case results in the conclusion that the ALJ erred in failing to evaluate Plaintiff's fibromyalgia at Step Three. Without any statement from the ALJ addressing Plaintiff's fibromyalgia, the Court is unable to review the ALJ's Step Three finding. Upon remand, the ALJ must provide some analysis regarding whether Plaintiff's fibromyalgia medically equaled a listing or combined with another impairment to equal a listing. *See Cashin v. Colvin,* No. 1:12-CV-909, 2013 WL 3791439, at *5 (N.D. Ohio July 18, 2013) (Report & Recommendation of Limbert, M.J., adopted by Gaughan, J.) (remanding where the ALJ ignored the plaintiff's fibromyalgia at Step Three).

Plaintiff also argues that the ALJ's analysis of Listings 1.04 and 11.14 was similar to the ALJ's Step Three discussion in *Brock v. Colvin*, No. 3:14-CV-1075, 2015 WL 5124759 (N.D. Ohio May 28, 2015) (Limbert, M.J.) *objections sustained*, No. 3:14-CV-1075, 2015 WL 5102994 (N.D. Ohio Aug. 31, 2015) (Carr, J.), which the district court judge concluded was insufficient. The ALJ's analysis here is distinguishable from

14

*Brock*. In *Brock* the ALJ wrote that the plaintiff's "limitations . . . do not satisfy the terms of Listing 1.04" and did not mention any medical evidence or the record. 2015 WL 5124759 at *11. Here, the ALJ specifically mentioned the record and stated that she found no evidence that would satisfy the various requirements of Listings 1.04 and 11.14. The ALJ's discussion provides sufficient grounds for the Court to review the ALJ's finding, and Plaintiff has not directed the Court to evidence demonstrating that the ALJ's conclusion as to these listings lacks substantial support. Accordingly, Plaintiff's argument regarding the ALJ's analysis of Listings 1.04 and 11.14 is not well taken.

### 2. The ALJ's Analysis of Plaintiff's Fibromyalgia

Plaintiff also argues that the ALJ erred by limiting her consideration of Plaintiff's fibromyalgia to Step Two of the sequential evaluation and by failing to consider fibromyalgia pursuant to S.S.R. 12-2p when formulating the RFC. The Commissioner contends that the ALJ adequately considered Plaintiff's fibromyalgia and cited substantial evidence to support the conclusion that Plaintiff is not disabled.

The RFC is an indication of a claimant's work-related abilities despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. §§ 404.1546(c), 416.946(c), and must consider all of a claimant's medically determinable impairments, both individually and in combination. S.S.R. 96-8p, 1996 WL 374184 (July 2, 1996). While the RFC is for the ALJ to determine, the claimant bears

the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

S.S.R. 12-2p outlines the evaluation process for fibromyalgia at each step of the sequential evaluation. S.S.R. 12-2p, 2012 WL 3104869, at *5-6 (July 25, 2012). The Ruling instructs that when possible during the RFC analysis, the ALJ should consider a longitudinal record because fibromyalgia symptoms can wax and wane such that a claimant may have "bad days and good days." *Id.* at *6. The Ruling notes that while the usual vocational considerations apply, the widespread pain and other symptoms associated with fibromyalgia, such as fatigue, may result in limitations that prevent a claimant from performing a full range of work. *Id.*

Here, the ALJ discussed evidence related to Plaintiff's fibromyalgia at Step Two of the sequential evaluation. (Tr. 13-15.) This discussion, however, is essentially a longitudinal recitation of Plaintiff's medical history without any evaluation of the evidence or any discussion of what impact, if any, Plaintiff's fibromyalgia has on the RFC. (*Id*.) In her RFC analysis, the ALJ discussed medical opinions from the state agency examining and reviewing physicians but did not mention any medical evidence related to Plaintiff's fibromyalgia. (Tr. 16-19.) The ALJ's failure to conduct such an evaluation and analysis of the evidence frustrates judicial review and necessitates remand.

The Commissioner argues that the RFC adequately accounts for Plaintiff's limitations and points to medical evidence to support this conclusion. The Commissioner's arguments constitute post hoc rationalizations. "[T]he courts may not accept appellate counsel's post hoc rationalizations for agency action. It is

16

well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, at *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted)).  Accordingly, upon remand the ALJ should consider and evaluate the evidence related to Plaintiff's fibromyalgia and determine what effect, if any, that evidence has on the RFC.

## VI.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

                               s/ *Nancy A. Vecchiarelli*
                               U.S. Magistrate Judge

Date: December 11, 2015

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986)**.